# THE GOTTSCHALK COMPANY
*v.*
# THE LIVE OAK DISTILLERY COMPANY.

JUDGMENT CREDITORS' SUITS; PRIORITY OF LIEN; CROSS-BILLS.

A general creditors' bill was filed by A for the administration of a decedent's estate. B subsequently filed a cross-bill to satisfy a judgment recovered against the executors of decedent by the establishment of a lien against their interest in the estate. A motion to strike out the cross-bill was denied and a demurrer then interposed was not urged. An original bill was then filed by A to satisfy a judgment he had recovered against the executors out of their interest in the estate. Thereafter C filed a bill against all parties for the consolidation of all the suits and the appointment of receivers to wind up the estate. The causes were consolidated, no one objecting, receivers appointed, sales made and reported, and their report and accounts referred to the auditor, who reported priority of lien in favor of B as to a balance due the executors. Upon exceptions by A, who claimed priority over B on the ground that priority could not be acquired by cross-bill, it was *held* confirming the auditor's report that the cross-bill was effective in giving priority to B, any right of objection A might have had to it having been waived by him.

No. 481. Submitted October 9, 1895. Decided November 4, 1895.

HEARING on an appeal from a decree confirming a report of the auditor. *Affirmed.*

The Court in its opinion stated the case as follows :

Patrick B. Dunn was a wholesale dealer in liquors in the city of Washington. He died March 28, 1890, leaving a widow, Ann Dunn, and several children. By his will Ann Dunn and one of his sons, William H. Dunn, were made executors, and his entire estate was devised and bequeathed to his widow, Ann Dunn, for life, with the remainder to his children. The will contained the following clause : " And it is my will and desire that my executors shall carry on

the business in which I have been engaged for the benefit of my said wife and children until such time as my executors shall consider best to dispose of the same, when I authorize them to convert said business and the stock, &c., connected therewith, into money, and dispose of the same according to the terms of the first item of this will.''

The estate consisted of a small amount of personal and considerable real property. The executors continued the business for something more than a year, with disastrous consequences.

This litigation began in a bill (No. 13,343) filed April 7, 1892, by the Gottschalk Company against the executors, the children and devisees of the testator, and the trustees of certain mortages upon portions of the real estate. The bill alleged indebtedness by the testator to the complainant in the sum of $5,928.72, on account of goods sold him on account of his business and due at the time of his decease, demand of the executors, refusal to pay, &c. It alleged that the personal estate in the hands of the executors was insufficient to pay the debts, and describing the real estate left by the testator, prayed that the same be subjected to the payment of the indebtedness. The bill was also for the benefit of such other creditors as might come in, and prayed for an account, for discovery as to the real estate of the testator, for the application of the personal estate, and for the sale of the real estate to cover the deficiency should the personal estate not be sufficient.

May 9, 1892, the Live Oak Distillery Company filed a petition to intervene and for leave to file a cross-bill, which was granted. The petitioner alleged the recovery of a judgment against the executors, Ann and William H. Dunn, April 9, 1892, for the sum of $9,205.43, with issue of execution thereon and return *nulla bona*. The cross-bill, filed the same day, set out the indebtedness in full as contracted by the executors in carrying on the business under the will, the recovery of judgment, issue of execution, &c. It specially described certain real estate whereon the busi-

ness was carried on as invested therein, and claimed a lien thereon subject to the lien of the creditors of the testator, and asked that such creditors be first required to exhaust the real estate of the testator not invested in said business. It further alleged that the interest of Ann Dunn and William H. Dunn in all of the real estate described in the bill of the Gottschalk Company was equitably subject to the demand of complainant, after the satisfaction of the claims of creditors of the testator, and that upon sale of the said real estate, other than that invested in the business, any surplus distributable to said Ann Dunn and William H. Dunn, should be applied to the satisfaction of complainant's judgment aforesaid.

The prayer was that the complainant be decreed to have a special lien on the lots invested in the business, subject only to the lien of the creditors of the testator; that the estate be marshaled and the general estate be subjected to the lien of the testator's debts, before subjecting that invested in the business ; and that the life-estate of the widow, Ann Dunn, and the one-eighth interest of William H. Dunn as devisee, in all of the real estate be decreed subject to the complainant's debt, and that their interest in any surplus arising from the sale of said real estate be applied thereto. A motion to strike out this cross-bill was made by the defendants, Ann and William H. Dunn, and overruled, whereupon they filed a demurrer thereto, which has never been acted upon.

On October 20, 1892, the Gottschalk Company filed another original bill (No. 14,278) against the executors, devisees and the trustees named in their first bill, in which, after reciting the same general facts as in No. 13,393, they alleged that the executors aforesaid, while carrying on said business under the will, became indebted to complainant in the sum of $7,181.01, for which it recovered judgment against them on April 9, 1892, on which execution had been issued and returned *nulla bona.* The prayer was for an account of the incumbrances, &c., and for a decree for

the sale of the interests of said Ann Dunn and William H. Dunn as devisees, in all the real estate, other than the premises used in the business, and its application to the complainant's demand.

On March 28, 1893, Mary A. Ashburn, one of the children and devisees of said Patrick B. Dunn, filed a bill against the executors, devisees and creditors of the testator, and against the creditors of Ann and William H. Dunn, including the appellant and appellee herein. This bill, at great length, set out the history of the business, the indebtedness of the testator and his executors on account of said business, the property of the testator and the claims against the same, and a history of the proceedings that had been instituted on account thereof, as they appear hereinabove. The bill also alleges mismanagement and misconduct on the part of the executors, the misapplication of the revenues of the real estate by the widow and life tenant, and the necessity, in the interest of creditors, secured and unsecured, and of the devisees, of having receivers appointed to take possession of, manage and sell the real estate. The bill prayed that the causes No. 13,343 and 14,278 be consolidated with her suit; that an account be taken of the acts and doings of the executors; and that distribution be had of the proceeds of the estate, after sale by the receivers, and a full accounting, &c.

Answers to this bill were filed by the Gottschalk Company and the Live Oak Distillery Company, in which they reasserted their several claims as in their former proceedings hereinabove set forth in due order. October 30, 1893, on motion of the complainant, no one objecting, the other causes were consolidated with this one.

Receivers were appointed to take charge of and sell the real estate described in the bill, keeping separate accounts of the sale of each item thereof. Sales were made and reported, whereupon the account and report of the receivers were referred to the auditor to state the account and report as to the distribution of the proceeds. The entire report

of the auditor is not given in the record, as exception seems to have been taken to but one part thereof.

It appears from the report that there remained from the proceeds of sale the sum of $2,826,27 on account of the interests of the said Ann Dunn and William H. Dunn, which the auditor reported as covered by the lien of the cross-bill of the Live Oak Distillery Company to the exclusion of the Gottschalk Company. The latter filed exceptions to the report, claiming that the lien acquired by its independent bill (No. 14,278) was superior to that of the former. The exceptions were overruled, and a decree passed ordering the money paid to the Live Oak Distillery Company as reported by the auditor. It is from this decree that the appeal has been prosecuted, and the only parties before the court are the two rival claimants aforesaid of this fund, which is insufficient to satisfy the demand of either.

*Mr. S. T. Thomas* for the appellant.

*Messrs. A. A. & T. W. Birney* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

Under the law prevailing in the District of Columbia, an equitable estate or interest cannot be seized and sold under execution ; the sole remedy of the judgment creditor is in equity. Both parties to this appeal, being judgment creditors of Ann Dunn and William H. Dunn, undertook to subject their interests in the lands, out of the sale of which the fund in controversy arose, by proceeding in equity ; the appellee by its cross-bill filed May 9, 1892, in cause No. 13,343, and the appellant by its original bill (No. 14,278), filed October 20, 1892. Both parties invoke the doctrine established in *Freedman's Savings and Trust Co.* v. *Earle,* 110 U. S. 710, that a judgment creditor in this District may acquire priority of lien by filing his bill before that of others.

The cross-bill was filed some months prior to the original bill of appellant in No. 14,278, and is specific in its allegations and prayer for relief. The only question in the case, then, as it stands here, is, could the appellee acquire priority by proceeding in that way and not by independent bill ? The appellant contends that it could not, on the ground that the matter of the cross-bill, to that extent, was not germane to the subject-matter of its original bill in No. 13,343, and was not proper matter to be litigated therein. The original bill was a general creditors' bill for the administration of the testator's estate, and had no relation to the debts created after his death by his representatives. The intervention of the appellee and the filing of its cross-bill were by leave of the court, and did not necessitate the making of any new parties to the suit. We do not think it necessary or proper to decide the interesting question raised by this contention. Concede that it ought to have prevailed, if made at the proper time, it now comes too late. When this cross-bill was filed two of the defendants moved to strike it out. Upon the denial of that motion they demurred. The demurrer was not urged, and the parties who filed it have passed from the case. Appellant, who was complainant in that suit, made no objection whatever. Subsequently he acquiesced in the consolidation of this suit, and of his independent bill to fix the same lien, with the bill of Mary A. Ashburn, which had for its object the sale, settlement and distribution of the entire estate, and still made no objection to the cross-bill. The court had complete jurisdiction of all the parties and of all the interests involved when it made the reference to the auditor. If the appellant had any right to object to the cross-bill, he must be held to have waived it.

Not having been objected to, the cross-bill occupied the attitude of an independent bill to subject the special interests of Ann and William H. Dunn in the estate to the lien of appellee's judgment, and gave it priority under the rule laid down in *Freedman's Savings and Trust Co.* v. *Earle, supra.*

D. C.]                         Syllabus.

The court did not err in confirming the report of the auditor, and *its decree must be affirmed. The costs will be paid out of the fund. It is so ordered.*